## Appeal of EDWIN M. BROWN.        Docket No. 499.

The taxpayer acquired one farm prior to 1917 and during that year acquired an oral option to purchase another. Before the close of the calendar year 1917 he sold the farm which he owned and all his right, title and interest in the other to a corporation. In that year he received the entire purchase price for both farms except the amount actually required to be paid out in acquiring the one on which he had the option. In 1918 he acquired the legal title to the second farm and conveyed it to the corporation pursuant to the verbal agreement. Held that the entire gain arising from the sale of both farms should be included in gross income for 1917.

Submitted January 2, 1925; decided January 31, 1925.

*Frank C. Olive, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal involves income taxes for the year 1918. The question presented by the pleadings is whether the profits realized from the sale of certain farms referred to in the findings of fact were realized in 1918 or in 1917.

### FINDINGS OF FACT.

During the year 1915 the taxpayer purchased for $13,400 a tract of land containing 134 acres known as the Everson farm. On October 31, 1917, he acquired by assignment an option on a farm consisting of 141.9 acres known as the Richard Fleming farm. This option was renewed from time to time and finally extended to February 20, 1918. Prior to December 1, 1917, he entered into an oral agreement with the Standard Brick Co. of Crawfordsville, Ind., to sell these two farms. The purchase price agreed upon was the return of the actual cash required to be paid in acquiring the farms and in addition thereto $60,000 par value of bonds and $50,000 par value of preferred stock of the Standard Brick Co. On or about November 30, 1917, the taxpayer executed and delivered to the Standard Brick Co. a deed to the Everson farm. Between December 1, 1917, and December 17, 1917, the taxpayer received from the Standard Brick Co. the stock and bonds aforesaid in accordance with the oral agreement previously made. The deed to the Richard Fleming farm was not executed and delivered until after the close of the calendar year 1917 and the amount of $25,542 which was the amount of cash required to purchase that farm including the amount of $7,500 which

represented a mortgage which was assumed, was paid to the taxpayer during 1918. The corporation treated both farms as its property in 1917 and included both of them in its mortgage bonds, which it issued during that year.

At various times during the month of December, 1917, the taxpayer sold certain shares of the preferred stock which he received, and by the end of the calendar year 1917 he had sold 731½ shares of such stock at par receiving $7,350 therefor. The bonds aggregating $60,000 par value were assigned by the taxpayer to the Central States Life Insurance Co. of Crawfordsville, Ind., in December, 1917, for which he received $10,000 in cash and that company entered the balance, being the difference between the $10,000 and the $60,000, on its books as surplus. The taxpayer did not place a legal obligation upon the Central States Life Insurance Co. to repay him the difference between the par value of said bonds and the value which that company entered upon its books but the minutes of that corporation provided that if the company was able to do so at some time in the future it would pay over such amount to the taxpayer. There was a moral but not a legal obligation to pay the taxpayer said sum.

The corporation authorized an issue of bonds in the amount of $200,000 of which only $60,000 were issued and outstanding. The following liens had priority over the bond issue: $17,100 first mortgage bonds against the plant and original property of the old Standard Brick Co. which the new corporation assumed, and $7,500 first mortgage on the Fleming farm. Its total authorized capital stock was $400,000 par value common stock, and $400,000 par value preferred stock. Its preferred stock sold from time to time at par.

### DECISION.

The determination by the Commissioner of a deficiency in the amount of $14,779.36 is disapproved.

### OPINION.

TRAMMELL: The question presented in this appeal is whether the gain derived by the taxpayer from the sale of the two farms referred to in the findings of fact should be included in gross income for 1917 or 1918. From the findings of fact it is clear that the Everson farm was sold and the entire consideration therefor was received before the close of the calendar year 1917.

When the verbal agreement was entered into with respect to the sale of the Fleming farm, the taxpayer did not own it. He sold and transferred, however, all the right, title, and interest he had in this farm, which was the right to acquire it for the agreed consideration of $25,542. He received the entire consideration for the interest which he sold in 1917. When the Standard Brick Co. turned over to him in 1918 the amount of money which was required to pay the purchase price stipulated in the option he had no interest of any kind in the land. He acted merely as agent for the Standard Brick Co. in paying over the money for it and was merely a conduit through which the legal title passed.

While the Commissioner in adjusting the tax liability of the taxpayer treated the stock and bonds in excess of the amount thereof which was sold during 1917 as worthless, the Board finds no evidence of the worthlessness thereof at that time. On the other hand, it appears that the taxpayer sold a portion of the said stock and bonds for cash to persons dealing at arms' length with him during December, 1917. The Standard Brick Co. also sold a portion of its stock for cash at par. The fair market value of stocks and bonds is what willing purchasers pay to willing sellers on the open market even though the assets of the corporation do not reflect such values.

It is the opinion of the Board that the entire gain arising from the sale of the two farms in question was received in 1917.